Hirlye R. "Ryan" Lutz, III (ASB-6641-E59L)
Leila H. Watson (ASB-3023-S74L)
F. Jerome Tapley (ASB-0583-A56T)
CORY WATSON, P.C.
2131 Magnolia Ave. S.
Birmingham, AL 35205
Telephone: (205) 328-2200
rlutz@corywatson.com
lwatson@corywatson.com
jtapley@corywatson.com

Jeffrey D. Kaliel (pro hac vice to be filed)
Sophia G. Gold (pro hac vice to be filed)
KALIEL, PLLC
1875 Connecticut Ave. NW 10th Floor
Washington, D.C.  20009
Telephone: (202) 350-4783
jkaliel@kalielpllc.com
sgold@kalielpllc.com

Arthur Stock (pro hac vice to be filed)
Lisa A. White (pro hac vice to be filed)
Ryan D. McMillan (pro hac vice to be filed)
GREG COLEMAN LAW PC
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (865) 247-0080
arthur@gregcolemanlaw.com
lisa@gregcolemanlaw.com
ryan@gregcolemanlaw.com

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NORTHERN DISTRICT OF ALABAMA**
**NORTHEASTERN DIVISION**

| | |
|---|---|
| **HEATHER LESLIE**, on behalf of herself and all others similarly situated,<br>                    Plaintiff,<br>     v.<br><br>**REDSTONE FEDERAL CREDIT UNION**,<br>                    Defendant. | Case No. _____<br><br>**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |

COMES NOW the Plaintiff Heather Leslie, by counsel, for her Class Action Complaint against the Defendant, alleges as follows:

## INTRODUCTION

1. This is a civil action seeking monetary damages, restitution and declaratory relief from Defendant, Redstone Federal Credit Union ("RFCU"), arising from the unfair and unconscionable assessment and collection of Overdraft Fees ("OD Fees") or Not Sufficient Fund Fees ("NSF Fees") on transactions that did not overdraw an account.

2. The plain language of RFCU's adhesion contracts specifically promises that RFCU will only charge OD Fees or NSF Fees on items when such items cause the account to have a negative balance.

3. The Overdraft Form that is part of the contract between RFCU and Ms. Leslie states that "[a]n overdraft occurs when you do not have enough money in your account to cover a transaction, but we pay it anyway." Attached as Exhibit 1.

4. The Account Agreement between RFCU and Ms. Leslie and its other accountholders, attached as Exhibit 2, states that an "overdraft" is only a transaction "presented against nonsufficient funds…in the [account,]" or for items "that will or would overdraw your account."

5. The Account Agreement does not define "cover" or "overdraw your account" or specify the manner in which an account balance is calculated for purposes of determining overdrafts.

6. According to the monthly account statements prepared by RFCU, Ms. Leslie's account balance was not negative when she was charged OD Fees on certain transactions. Thus, the items did not actually overdraw Ms. Leslie's account but RFCU charged hefty OD Fees

anyway.

7. These practices work to catch accountholders in an increasingly devastating cycle of bank fees.

8. Ms. Leslie and other RFCU customers have been injured by RFCU's practices. On behalf of herself and the putative class, Ms. Leslie seeks damages, restitution and injunctive relief for RFCU's breach of contract and violation of the Electronic Funds Transfer Act, 15 U.S.C. § 1693 *et seq.*

## JURISDICTION

9. This Court has original jurisdiction over this putative class action lawsuit pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d)(2) & (6), because the aggregate sum of the claims of the members of the putative class exceeds $5 million, exclusive of interest and costs, Ms. Leslie brings this action on behalf of a proposed class that is comprised of over one hundred members, and at least one of the members of the proposed class is a citizen of a different state than RFCU.  This Court also has original jurisdiction pursuant to 28 U.S. C. §§ 1331 and 1367(a), as one claim arises under a federal statute, the Electronic Funds Transfer Act.

10. Venue and personal jurisdiction are proper in this district because Defendant is headquartered in Huntsville (Madison County), Alabama, a county encompassed by this District.

## CLASS ACTION ALLEGATIONS

11. Ms. Leslie brings this action on behalf of herself and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.  This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23.

12. The proposed class is defined as:

> All RFCU checking account holders who, during the applicable statute of limitations, were charged OD Fees or NSF Fees on items that did not overdraw their checking accounts.

13. Ms. Leslie reserves the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

14. Excluded from the Class are RFCU, its parents, subsidiaries, affiliates, officers and directors, any entity in which RFCU has a controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

15. The members of the Class are so numerous that joinder is impractical. The Class consist of thousands of members, the identity of whom is within the knowledge of and can be ascertained only by resort to RFCU's records.

16. The claims of Ms. Leslie are typical of the claims of the Class in that she, like all Class members, was charged improper NSF Fees and OD Fees. Ms. Leslie, like all Class members, has been damaged by RFCU's misconduct in that he paid improper NSF Fees and OD Fees. Furthermore, the factual basis of RFCU's misconduct is common to all Class members and represents a common thread of unfair and unconscionable conduct resulting in injury to all members of the Class.

17. There are numerous questions of law and fact common to the Class and those common questions predominate over any questions affecting only individual Class members.

18. Among the questions of law and fact common to the Class are whether RFCU:

   a. Charged OD Fees or NSF Fees on items when those items did not overdraw accounts;

   b. Breached its contract with consumers by charging OD Fees or NSF Fees on

       items when those items did not overdraw accounts;

    c.     Breached the covenant of good faith and fair dealing by charging OD Fees or NSF Fees on items when those items did not overdraw accounts;

    d.     Violated the Electronic Funds Transfer Act by charging OD Fees or NSF Fees on items when those items did not overdraw accounts;

    e.     Whether Ms. Leslie and the Class were damaged by Defendant's conduct and if so, the proper measure of damages.

19.     Ms. Leslie is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers and against financial institutions. Accordingly, Ms. Leslie is an adequate representative and will fairly and adequately protect the interests of the Class.

20.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of RFCU, no Class member could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the Class members will continue to suffer losses and RFCU's misconduct will proceed without remedy. Moreover, given that the improper fees were assessed in a uniform manner, common issues predominate over any questions, to the extent there are any, affecting only individual members.

21.     Even if Class members themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a

class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

6

**PARTIES**

22.     Ms. Leslie is a natural person who is a citizen of Tennessee and resides in Murfreesboro, Tennessee. Ms. Leslie has a personal checking account with RFCU.

23.     RFCU is one of the nation's largest credit unions. RFCU is headquartered in Huntsville, Alabama and maintains 26 branches across Alabama and Tennessee.

**FACTUAL BACKGROUND AND GENERAL ALLEGATIONS**

**A.     RFCU's Account Documents Promise That It Will Only Charge OD Fees or NSF Fees on Transactions That Actually Overdraw an Account**

24.     Ms. Leslie's checking account with RFCU was, at all relevant times, governed by RFCU's standardized Account Agreement and Overdraft Form, the material terms of which are drafted by RFCU, amended by RFCU from time to time at its convenience and complete discretion, and imposed by RFCU on all of its customers.

25.     In plain, clear, and simple language, the contract documents discussing OD Fees and NSF Fees promise that RFCU will only charge OD Fees or NSF Fees on items which would place the account in the negative.

26.     The Overdraft Form that is part of the contract between RFCU and Ms. Leslie, attached as Exhibit 1, states that "[a]n overdraft occurs when you do not have enough money in your account to cover a transaction, but we pay it anyway." .

27.     The Account Agreement between RFCU and Ms. Leslie and its other accountholders, attached as Exhibit 2, states that an "overdraft" is only a transaction "presented against nonsufficient funds…in the [account,]" or for items "that will or would overdraw your account."

28.     The Account Agreement does not define "cover" or "overdraw your account" or

7

specify the manner in which an account balance is calculated for purposes of determining overdrafts.

29. Contrary to these promises, RFCU's uniform policy and practice is to disregard the actual amount of money in the account or whether there is a negative balance and, instead, to assess OD Fees or NSF Fees.

30. By using some other, unspecified calculation—as opposed to the actual money in an accountholder's account—to determine whether to assess an OD Fee or NSF Fees, RFCU increases the number of OD Fees and NSF Fees it assesses on its accountholders.

31. This manufactured balance is not the official balance of the account, and it is not the balance provided to accountholders in their monthly statements from RFCU. As such, it is reasonable for Ms. Leslie and accountholders like her to interpret and understand RFCU's use of the terms above as referring to the official balance in the account i.e. the actual money in the account. Ms. Leslie and class members could not reasonably have expected that RFCU would assess OD Fees or NSF Fees in this manner.

**B.     Examples of RFCU's Imposition of NSF Fees on Ms. Leslie**

32. RFCU charged Ms. Leslie NSF Fees on items that did not overdraw her account.

33. For example, on June 28, 2019, Ms. Leslie was assessed an OD Fee for a $18.88 payment to Capital One. This is despite the fact that, according to the bank statement issued by RFCU, *her account never went negative and always had sufficient funds to cover the item.*

**C.     RFCU Abuses Its Discretion**

34. To the extent the account documents do not explicitly bar the practice described above, RFCU exploits contractual discretion to the detriment of accountholders and breaches good faith and fair dealing when it uses these policies.

35. It was bad faith and totally outside Ms. Leslie's reasonable expectations for the credit union to use its discretion to assess NSF Fees for items that did not actually overdraw her account.

36. Additionally, RFCU grants itself discretion to charge—or not to charge—an OD Fee or NSF Fee on a given item. When it charges an OD Fee or an NSF Fee on items that do not actually overdraw an account, RFCU engages in bad faith and contradicts reasonable consumer expectations.

37. RFCU acted in bad faith and outside reasonable consumer expectations when it assessed OD Fees and NSF Fees when there was enough money in account holders' accounts to cover the items and by using a manufactured account calculation to increase the number of OD Fees or NSF Fees it could assess.

### D. Regulation E Confers Important Rights to RFCU Account Holders

38. Since 2010, Regulation E has required all banks and credit unions to provide a series of specific, statutorily mandated written disclosures to accountholders, and to then receive the account holder's affirmative consent in return, prior to charging overdraft fees against the accountholder's account as a result of an ATM and/or non-recurring debit card.

39. Specifically, the "Opt-In Rule" of Regulation E (12 C.F.R. § 1005.17) provides that "a financial institution ... shall not assess a fee or charge ... pursuant to the institution's overdraft service, unless the institution: (i) [p]rovides the consumer with a notice in writing ... describing the institution's overdraft service" and (ii) "[p]rovides a reasonable opportunity for the consumer to affirmatively consent" to enter into the overdraft service. *Id.* To comply with the affirmative consent requirement, a financial institution must provide a segregated description of its overdraft practices that is "clear and readily understandable" (12 C.F.R. § 205.4(a)(l)), accurate, non-

9

misleading and truthful, as mandated by 12 C.F.R. § 1005.17. The financial institution must provide confirmation of any accountholder's decision to opt-in to such a service in a manner that complies with 12 C.F.R. § 1005.17.

40. The intent and purpose of the Opt-In Rule is to "assist customers in understanding how overdraft services provided by their institutions operate ... by explaining the institution's overdraft service ... in a clear and readily understandable way"- as stated in the Official Staff Commentary (74 Fed. Reg. 59033, 59035, 59037, 5940, 5948), which is "the CFPB's official interpretation of its own regulation," "warrants deference from the courts unless 'demonstrably irrational,'" and should therefore be treated as "a definitive interpretation" of Regulation E. *Strubel v. Capital One Bank (USA)*, 2016 U.S. Dist. LEXIS 41487, *11 (S.D.N.Y. 2016) (quoting *Chase Bank USA v. McCoy*, 562 U.S. 195, 211 (2011)) (so holding for the CFPB's Official Staff Commentary for the Truth In Lending Act's Regulation Z)).

41. The importance of Regulation E is highlighted by the fact that the CFPB's study of actual practices found that: (a) ATM and debit card transactions are by far the most frequent transactions that occur; (b) overdraft fee policies entail expensive fees at very little risk to the financial institutions; and (c) opted-in accounts have seven times as many overdrafts that result in fees as not opted-in accounts.

**FIRST CLAIM FOR RELIEF**
**Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing**
**(On Behalf of Plaintiff and the Class)**

42. The allegations included in paragraphs 1 through 41 are incorporated by reference and re-alleged as if fully set forth herein.

43. Ms. Leslie and RFCU have contracted for bank account deposit, checking, ACH, ATM, and debit card services. That contract does not permit RFCU to charge OD Fees or NSF

Fees on items that do not actually overdraw an account.

44. Thus, RFCU breached the express terms of its contract with Ms. Leslie and the Class by charging OD Fees or NSF Fees on items that do not actually overdraw the account, *i.e.* when there were sufficient actual funds in the account to cover the item.

45. Under the laws of Tennessee and Alabama, good faith is an element of every contract pertaining to the assessment of OD Fees and NSF Fees. Whether by common law or statute, all such contracts impose upon each party a duty of good faith and fair dealing. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit – not merely the letter – of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

46. Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes her conduct to be justified. A failure to act in good faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of violations of good faith and fair dealing include evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

47. RFCU has breached the covenant of good faith and fair dealing in its Account Agreement with customers by charging OD Fees and NSF Fees on items that do not actually overdraw the account, *i.e.* when there were sufficient actual funds in the account to cover the items.

48. Ms. Leslie and members of the Class have performed all, or substantially all, of the obligations imposed on them under the contract.

49.     Ms. Leslie and members of the Class have sustained damages as a result of RFCU's breach of the contract.

**SECOND CLAIM FOR RELIEF**
**Violation of Electronic Fund Transfers Act (Regulation E)**
**C.F.R. § 1005 *et seq*. (authority derived from 15 U.S.C. § 1693 *et seq*.)**
**(On Behalf of Plaintiff and the Class)**

50.     The allegations in paragraphs 1 to 41 are incorporated by reference and re-alleged as if fully set forth herein.

51.     By charging OD Fees on ATM and nonrecurring transactions, RFCU violated Regulation E (12 C.F.R. §§ 1005 *et seq*.), the "primary objective" of which is "the protection of consumers" and which "carries out the purposes of the Electronic Fund Transfer Act (15 U.S.C. §§ 1693 *et seq*.) [the "EFTA"]" (§ 1005.l(b)), the "primary objective" of which, in turn, is also "the provision of individual consumer rights." (15 U.S.C. § 1693(b)).

52.     Specifically, the OD Fees violated what is known as the "Opt-In Rule" of Regulation E (12 C.F.R. § 1005.17). The Opt-In Rule states: "a financial institution ... shall not assess a fee or charge ... pursuant to the institution's overdraft service, unless the institution: (i) [p]rovides the consumer with a notice in writing [the opt-in notice] … describing the institution's overdraft service" and (ii) "[p]rovides a reasonable opportunity for the consumer to affirmatively consent" to enter into the overdraft program. *Id*. The notice "shall be clear and readily understandable." (12 C.F.R. § 205.4(a)(l)). To comply with the affirmative consent requirement, a financial institution must provide a segregated description of its overdraft practices that is accurate, non-misleading and truthful and that conforms to 12 C.F.R. § 1005.17 prior to the opt-in, and must provide its customers a reasonable opportunity to opt-in after receiving the description. The affirmative consent must be provided in a way mandated by 12 C.F.R. § 1005.17, and the financial institution must provide confirmation of the opt-in in a manner that conforms to 12 C.F.R.

§ 1005.17.

53. The intent and purpose of this Opt-In Contract is to "assist customers in understanding how overdraft services provided by their institutions operate ... by explaining the institution's overdraft service ... in a clear and readily understandable way," as stated in the Official Staff Commentary (74 Fed. Reg. 59033, 59035, 59037, 5940, 5948), which, as "the CFPB's official interpretation of its own regulation … warrants deference from the courts unless 'demonstrably irrational,'" and should therefore be treated as "a definitive interpretation" of Regulation E. *Strubel*, 2016 U.S. Dist. LEXIS 41487, at *11 (quoting *McCoy*, 562 U.S. at 211) (so holding for the CFPB's Official Staff Commentary for the Truth In Lending Act's Regulation Z).

54. RFCU failed to comply with Regulation E, 12 C.F.R. § 1005.17, which requires affirmative consent before a financial institution is permitted to assess overdraft fees against customers' accounts through an overdraft program for ATM and non-recurring debit card transactions. RFCU has failed to comply with the 12 C.F.R. § 1005.17 opt-in requirements, including failing to provide its customers with a valid description of the overdraft program which meets the strictures of 12 C.F.R. § 1005.17. RFCU's opt-in method fails to satisfy 12 C.F.R. § 1005.17 because, *inter alia*, it clearly indicates that (a) "authorization" and payment are coterminous; and (b) overdraft determinations are made at the time of transaction initiation, since in the absence of overdraft protection an accountholder will "not be able to … perform debit card transactions … on my checking when the funds are not available"; and (c) that an overdraft occurs when you "overdraw your account" or where insufficient funds exist to "pay" a given transaction, when in fact RFCU assesses overdraft fees even when there is enough money in the account to pay for the transaction at issue.

55. As exhibited by the transactions described herein, Plaintiff's account had funds to

cover the transactions, which were paid, yet RFCU charged OD Fees.

56. As a result of violating Regulation E's prohibition against assessing overdraft fees on ATM and non-recurring debit card transactions without obtaining affirmative consent to do so, RFCU has harmed Plaintiff and the Class.

57. Due to RFCU's violation of Regulation E (12 C.F.R. § 1005.17), Plaintiff and members of the Class are entitled to actual and statutory damages, as well as attorneys' fees and costs of suit pursuant to 15 U.S.C.A. § 1693m.

## PRAYER FOR RELIEF

WHEREFORE, Ms. Leslie and members of the Class demand a jury trial on all claims so triable and judgment as follows:

A. For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as Class representative and Plaintiffs' attorneys as Class Counsel;

B. Declaring RFCU's NSF Fee and OD Fee policies and practices to be wrongful, unfair and unconscionable;

C. Restitution of all OD Fees and NSF Fees paid to RFCU by Ms. Leslie and the Class on items that did not actually overdraw an account i.e. when there were sufficient actual funds in the account to cover the items;

D. For each member of the Class, actual damages in an amount according to proof;

E. An injunction against RFCU's NSF Fee and OD Fee policies challenged herein;

F. Pre-judgment and post-judgment interest at the maximum rate permitted by applicable law;

G. Costs and disbursements assessed by Ms. Leslie in connection with this action, including reasonable attorneys' fees pursuant to applicable law; and

H. Such other relief as this Court deems just and proper.

## TRIAL BY JURY IS DEMANDED

Plaintiff respectfully demands a trial by jury on all issues so triable.

Dated: May 5, 2020

        Hirlye R. "Ryan" Lutz, III (ASB-6641-E59L)
        Leila H. Watson (ASB-3023-S74L)
        F. Jerome Tapley (ASB-0583-A56T)
        **CORY WATSON, P.C.**
        2131 Magnolia Ave. S.
        Birmingham, AL 35205
        Telephone: (205) 328-2200
        Facsimile: (205) 324-7896
        *rlutz@corywatson.com*
        *lwatson@corywatson.com*
        *jtapley@corywatson.com*

        Jeffrey D. Kaliel*
        Sophia Gold*
        **KALIEL PLLC**
        1875 Connecticut Ave. NW 10th Floor
        Washington, D.C. 20009
        Telephone: (202) 350-4783
        *jkaliel@kalielpllc.com*

        Arthur Stock*
        Lisa A. White*
        Ryan D. McMillan*
        **GREG COLEMAN LAW PC**
        First Tennessee Plaza
        800 S. Gay Street, Suite 1100
        Knoxville, TN 37929
        Telephone: (865) 247-0080
        Facsimile: (865) 522-0049
        *arthur@gregcolemanlaw.com*
        *lisa@gregcolemanlaw.com*
        *ryan@gregcolemanlaw.com*

        **pro hac vice* applications to follow